## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | |
|---|---|
| JARED THORNTON, MALINI DHANARAJAN and BLAIRE BENNETT, on behalf of themselves and others similarly situated, | **Case No. 4:22-cv-00429** FLSA Collective Action |
| Plaintiffs, | |
| vs. | |
| DAO RESTAURANT, LLC, | |
| Defendant | |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND FOR CERTIFICATION OF FLSA COLLECTIVE ACTION FOR SETTLEMENT PURPOSES ONLY

Plaintiffs, JARED THORNTON, MALINI DHANARAJAN and BLAIRE BENNETT ("Plaintiffs"), individually and on behalf of all individuals similarly situated, and Defendant, DAO Restaurant, LLC ("Defendant") (together, "the Parties") jointly move for approval of the Parties' Settlement Agreement attached as **Exhibit "1"** and for certification of an FLSA collective action for settlement purposes. In support of this Joint Motion, the Parties submit the following memorandum of law.

A. SUMMARY

The Parties request the Court approve the settlement reached in this Fair Labor Standards Act ("FLSA") case. The Settlement Agreement completely resolves Plaintiffs' and the proposed collective members' claims at issue in this lawsuit. The settlement is

fair and reasonable, and will provide meaningful relief to Plaintiffs and the similarly situated employees who opt-into the settlement considering the inherent risks of litigation and trial. Defendant denies any wrongdoing, the violation of any federal or state wage-and-hour law, and any damages at issue. For these reasons, settlement of this matter is fair, reasonable and in the best interest of Defendant, Plaintiffs, and the proposed collective members. The Parties therefore request the Court approve the Parties' Settlement Agreement (attached as Ex. 1), including Notice to the proposed collective (attached to the Settlement Agreement as Ex. A), the Claim Form and Release (attached to the Settlement Agreement as Ex. B) and dismiss the alleged claims with prejudice upon the conclusion of the notice process.

**B.    FACTUAL & PROCEDURAL BACKGROUND**

Dao Restaurant, LLC operates as a restaurant in Tallahassee, Florida that serves Japanese, Sushi, and Asian Fusion cuisine. *See* Defendant's website, "About Dao", available at https://www.daotally.com/about-dao/.[1] Defendant employs servers and bartenders to carry out its food and beverage offerings. Plaintiffs allege that Defendant violated the FLSA by sharing servers' and bartenders' tips from the mandatory tip pool with Defendant's managers and/or owners. D.E. 43-1, Amended Compl. at ¶ ¶ 3, 23.[2]

---

[1] Plaintiffs and the Putative Class Members all worked at the same, single location.

[2] Pursuant to Section 203(m)(2)(B) of the FLSA, "[a]n employer may not keep tips received by its employees for <u>any</u> purposes, including allowing managers or supervisors to keep any portions of employees' tips, <u>regardless of whether or not the employer takes a tip credit</u>." 29

Defendant is adamant that it did not include "managers" in the mandatory tip pool, and that it therefore does not owe damages to Plaintiffs or any of its servers or bartenders.

After substantial efforts between the Parties and their counsel, including extensive written discovery propounded on Defendant, the Parties participated in mediation on August 29, 2023, with Carlos Burruezo, a highly regarded labor law neutral with significant experience in labor and employment wage-and-hour litigation, to determine if the claims asserted could be settled on a global basis. The Parties were unable to settle at mediation, but continued arms-length settlement discussions including the exchange of additional records and data to attempt a class-wide resolution. When it appeared the Parties were unable to reach a resolution, Plaintiffs filed their Motion for Rule 23 Class Certification [D.E. 33] and Motion for FLSA Conditional Certification [D.E. 34] on February 2, 2024. However, the Parties continued sharing additional data and negotiating toward a resolution and ultimately notified this Court that they had reached a settlement on March 14, 2024 [D.E. 37]. Since that time, after substantial further work between the Parties and their counsel, the Parties were able to

---

U.S.C. § 203(m)(2)(B) (emphasis added); *see also Wajcman v. Inv. Corp. of Palm Beach*, 2008 WL 783741, *3 n.1 (S.D. Fla. Mar. 20, 2008) ("The practice of forced sharing of tips with management is an illegal practice, regardless of whether the members of management are also engaged in services that could be the subject of tipping."); *Markov v. Golden Isles Cruise Lines, Inc.*, 2016 WL 1117584, at *8 (S.D. Ga. Mar. 21, 2016) (in a tip pool involving managers, denying defendant's motion for summary judgment because managers are not customarily and regularly tipped employees).

reach a final settlement and memorialized its terms in the Parties' Collective Action Settlement Agreement. *See* Ex.1.

The Parties recognize and acknowledge the benefits of settling this case and the risks of not settling this case. Plaintiffs believe that the claims asserted in this case have merit and that the evidence developed to date supports the claims on a collective basis. Despite the strengths of their case, Plaintiffs are mindful of the arguments that will be raised by Defendant and its able counsel. Plaintiffs further recognize and acknowledge the expense and length of time that proceedings necessary to prosecute this matter as a collective action, post-trial proceedings, and any appeals would take. Counsel for Plaintiffs have considered the uncertain outcome and risks of the litigation, as well as the difficulties and delays inherent in litigation. Additionally, Defendant shared financial information which raised serious concerns with Defendant's ability to pay a settlement or judgment should it be required to pay additional fees and costs associated with prolonged litigation. Plaintiffs have, therefore, determined that the Settlement is fair, reasonable, and adequate. The Settlement confers substantial benefits upon, and is in the best interests of, Plaintiffs and the Potential Collective Members.

Defendant maintains that it has a number of meritorious defenses to the claims asserted in this action, including defenses to the merits, defenses to conditional certification, as well as arguments for future decertification. Nevertheless, Defendant recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending a potential collective action, the costs of any appeals, and the

disruption to its business operations arising out of litigation. Accordingly, Defendant believes that the Settlement is likewise in its best interests.

## C.    CERTIFICATION FOR SETTLEMENT PURPOSES ONLY

The Parties ask the Court to certify, for settlement purposes only, a collective action pursuant to Section 216(b) of the FLSA. The group who would be provided notice and an opportunity to join this lawsuit, defined in the Settlement Agreement as the "Potential Collective Members," is composed of: all current and former servers and bartenders who were paid a tip-credit wage and who contributed to a mandatory tip pool at Defendant's restaurant during one or more weeks during the period of November 1, 2019 to November 1, 2022 (the "Liability Period").

The certification of a collective action under the FLSA for settlement purposes would allow the Parties to send a Court-approved notice to all individuals who fall within the definition of the Potential Collective Members. The Notice explains that by submitting a valid and timely Claim Form and Release, the individual is agreeing to join the Lawsuit and participate in the settlement. As the Parties explain in more detail below, there are no due process concerns because, under the opt-in FLSA settlement process, only those individuals who affirmatively agree to join the lawsuit by submitting a valid and timely Claim Form and Release would be bound by the settlement.  If a Potential Collective Member chooses not to join this lawsuit by failing to submit a valid and timely Claim Form and Release, then that individual loses no rights and is free to pursue his or her individual claims, if desired, as he or she sees fit.  Unlike a class action where

there are absent class members and a class member may lose rights unless they opt-out, in a collective action such as this case, individuals forfeit no rights unless they voluntarily choose to be part of the lawsuit.

**D.    THE SETTLEMENT AGREEMENT**

The Parties seek to certify a collective action for settlement purposes under the FLSA and to send notice to all Potential Collective Members who worked for Defendant during the Liability Period. The Settlement will provide a fair, reasonable, and adequate recovery to all individuals who choose to opt-into it by submitting a valid and timely Claim Form and Release. Any of these current or former Potential Collective Members will be notified of and are eligible to join (i.e. opt-into) the Settlement.

The Parties' Agreement (Ex. 1) has been filed as an attachment to this Motion. Under the Agreement, Defendant will pay all Potential Collective Members who opt-in to this Lawsuit a formulated amount of alleged minimum wages due (i.e. the difference between the tip credit wage paid and the applicable statutory minimum wage rate, which results in $3.02 per hour worked), plus an amount to cover tips allegedly improperly retained using each Potential Collective Member's actual hours worked during the Liability Period ("Pro Rata Share").

The Agreement does not create any complicated claims process. Once the Settlement is approved, it will be administered by Plaintiffs' Counsel, who will distribute the Notice and Claim Form and Release to all Potential Collective Members via U.S. mail and email. To opt-into the settlement and obtain their settlement payments,

Potential Collective Members must submit a valid and timely Claim Form and Release to Plaintiffs' Counsel before the Claim Deadline.

Potential collective members who choose to opt-in ("Opt-in Collective Members") will be paid from a net settlement fund which will be used to pay Plaintiffs, Plaintiffs' counsel's fees, costs and expenses (including the costs to administer the notice process), excluding the General Release Payments to Plaintiffs.

**E.    AMOUNT OF THE SETTLEMENT.**

**1.    Amount of Fund and Individual Settlement Awards**

Defendant has agreed to pay a total amount of $162,500.00 (the "Maximum Settlement Amount"). Under no circumstance shall Defendant be required to pay more than the Maximum Settlement Amount. Out of the Maximum Settlement Amount, Defendant agrees to pay all Potential Collective Members an individual Settlement Award (described below), a General Release Payment to each Named Plaintiff in exchange for their execution of a General Release Agreement, Plaintiffs' Counsel's attorneys' fees (which was negotiated separate and apart from the amounts to be paid to Plaintiffs and the Potential Collective Members), costs and expenses (including the costs to administer the notice process).

Each of the Opt-in Collective Members shall be mailed a Settlement Check consisting of his or her settlement award from the Common Fund (each a "Settlement Award"). The Settlement Award for each Potential Collective Member will constitute a formulated amount of alleged minimum wages due (i.e. the difference between the tip

credit wage paid and the applicable statutory minimum wage rate, which results in $3.02 per hour worked), plus an estimated amount of tips allegedly improperly retained using each Potential Collective Member's actual hours worked during the Liability Period.

In addition to the money that is allocated to pay the Potential Collective Members, Defendant agrees to pay Plaintiffs' attorneys' fees, costs and expenses totaling $52,500.00, which is included in the maximum settlement amount. The attorneys' fees were negotiated separate and apart from the amounts to be paid to Plaintiffs and the Potential Collective Members, which exclusive of costs and expenses amounts to approximately 30% of the maximum settlement amount. Defendant also agrees to pay each Named Plaintiff $2,500.00 (for a total of $7,500.00) in exchange for their execution of a general release of any and all claims, including their individualized claims asserted in the Amended Complaint [D.E. 43-1].

## 2.    Releases

Plaintiffs' Counsel will distribute the Notice and Claim Form and Release documents to all Potential Collective Members. The Notice explains that by submitting a valid and timely Claim Form and Release, the individual is agreeing to join the Lawsuit and participate in the settlement. Only by submitting a valid and timely Claim Form and Release, will a Potential Collective Member be releasing Defendant from any and all wage and hour claims during the Liability Period. The Claim Form and Release to be executed and submitted shall include the mutually agreed upon release language.

Only the Named Plaintiffs (Thornton, Dhanarajan and Bennett) will be executing a general release whereby they will be releasing any and all claims whatsoever as described in the General Release Agreements attached to the Parties' Settlement Agreement as Exhibit C, in exchange for an additional payment of $2,500.00 each.

**F.    PROCEDURE AND GOVERNING LAW FOR APPROVAL OF SETTLEMENT AGREEMENT**

### 1.    Procedural Considerations

"The FLSA authorizes collective actions against employers accused of violating the FLSA." *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008) (citing 29 U.S.C. § 216(b)). The Eleventh Circuit has sanctioned a two-stage approach for determining whether to certify an FLSA collective action pursuant to section 216(b). *Id.* at 1260. The first stage is the "notice" or "conditional certification" stage, where the Court must determine whether notice of the action should be given to potential collective action members. *Id.* at 1260–61. The second stage is the "decertification stage," where, upon a motion for decertification, the Court must determine whether the collective should be decertified or the case should proceed to trial as a collective action. *Id.* at 1261.

This action is technically at the first stage—conditional certification. A plaintiff seeking conditional certification must show that there are other employees who desire to opt into the action and that the employees who desire to opt in are similarly situated. *Wooton v. Steelmaster Indus., Inc.*, No. 6:19-cv-419-Orl-37GJK, 2019 WL 2423786, at *2

(M.D. Fla. June 10, 2019) (citing *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991)). The standard at the first stage is fairly lenient and is typically satisfied through some combination of the pleadings, consents to join, affidavits, or other evidence demonstrating that there are other similarly situated employees who would opt into the action. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)). "If the district court conditionally certifies the class, putative class members are given notice and the opportunity to opt-in." *Id.* (quotation marks and citation omitted).

Here, the Parties agree, for settlement purposes only, that Plaintiffs and the Potential Collective Members are similarly situated. Plaintiff Thornton worked for Defendant as a server. Declaration of Thornton at ¶ 5, attached as **Exhibit 2**. Plaintiff Dhanarajan worked for Defendant as a server and bartender. Declaration of Dhanarajan at ¶ 6, attached as **Exhibit 3**. Plaintiff Bennett also worked for Defendant as a server and bartender. Declaration of Bennett at ¶ *5, attached as **Exhibit 4**. Defendant admits that all servers and bartenders are hourly paid employees. *See* Def's Answers to First Interrogatories, No. 6, attached as **Exhibit 5**; *see also* Thornton Decl., Ex. 3, at ¶ 10; Dhanarajan Decl., Ex. 4, at ¶ 9; Bennett Decl., Ex. 5, at ¶ 9. Defendant further admits that all servers and bartenders are required to contribute a portion of their tips to a mandatory tip pool. *See* Ex. 6, Def's Answer to Interrogatory No. 6; Thornton Decl., Ex. 3, at ¶ 11; Dhanarajan Decl., Ex. 4, at ¶ 10; Bennett Decl., Ex. 5,

at ¶ 10.[3] As such, Plaintiffs have met their lenient burden to show there are similarly situated individuals who should be given notice of this lawsuit and resulting settlement and given the opportunity to opt-in and Defendant agrees.

The Parties here have reached a settlement on behalf of Plaintiffs and all Potential Collective Members, which then resolves any need for the stage two "decertification stage." Where a motion to decertify is never filed/granted, like here, all opt-ins are necessarily party-plaintiffs. *See Prickett v. DeKalb County*, 349 F.3d 1294, 1296 (11th Cir. 2003) (stating, in a case deciding whether opt-in plaintiffs join individual claims brought by the named plaintiffs or the action as a whole, "by referring to them as 'party plaintiff[s]' Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs"). As such, unlike in Rule 23 class action settlements, which require both preliminary certification approval and final certification approval, in FLSA collective action settlements under 216(b) there is no necessity for the Court to rule on final certification.[4] This conclusion is wholeheartedly supported by the weight of authority within the Eleventh Circuit. *See*

---

[3] Prior to 2022, Defendant required servers and bartenders to contribute a tip share which equaled 4% of their net sales to the tip pool, which was then increased to 6% in 2022. Ex. 6, Def's Answer to Interrogatory No. 6; Thornton Decl., Ex. 3, at ¶ 12; Dhanarajan Decl., Ex. 4, at ¶ 11; Bennett Decl., Ex. 5, at ¶ 11.

[4] Although the Parties are not required to seek final certification approval, they intend to file with the Court all Consent Form and Releases executed by the Opt-in Collective Members prior to filing the Parties' Joint Notice of Completion of Settlement/Notice Procedures and Stipulation for Dismissal of the Lawsuit with Prejudice.

*Dozier v. DBI Servs., LLC*, 2021 WL 6061742, at *7 (M.D. Fla. Dec. 22, 2021) ("'[F]inal certification or decertification is not necessary' for the Court's approval of the Settlement Agreement, particularly where the parties were still completing discovery when they agreed to settle, the parties have not filed dispositive motions, and Defendants have not moved for decertification."), citing *Huff v. Bobcat N. Am., LLC*, Case No. 6:19-cv-861-Orl-37DCI, 2021 WL 268356, at *2 (M.D. Fla. Jan. 25, 2021) (*report and recommendation* adopted by 2021 WL 268355 (M.D. Fla. Jan. 27, 2021)) (noting that "the majority of approvals in other FLSA collective action settlements in the Middle District of Florida did not require such action") (citations omitted); *Mcguire v. Intelident Sols., LLC*, 2020 WL 10506642, at *3 (M.D. Fla. Sept. 2, 2020), *report and recommendation adopted,* 2020 WL 10506644 (M.D. Fla. Sept. 28, 2020) ("A final certification decision is not required. In deciding whether a settlement is fair and reasonable, no binding precedent requires different treatment of an FLSA collective action and an FLSA individual action."); *Campbell v. Pincher's Beach Bar Grill, Inc.*, No. 2:15-cv-695-FtM-99MRM, 2017 WL 3700629, at *2 (M.D. Fla. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 3668889 (Aug. 25, 2017); *Trentman v. RWL Communs., Inc.*, No. 2:15-cv-89-FtM-38CM, 2015 WL 5082725, at *2 (M.D. Fla. Aug. 27, 2015) (same); *Edwards v. CFI Sales & Mktg.*, No. 6:09-cv-234-Orl-28GJK, 2011 WL 5857423, at *3 (M.D. Fla. Nov. 4, 2011), *report and recommendation adopted*, 2011 WL 5857315 (Nov. 22, 2011).

FLSA collective action settlement agreements do, however, require judicial approval. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982). Because the settlement of a FLSA claim has no binding effect on absent class members—it only binds the potential class members who affirmatively opt-in— approval of the Settlement Agreement is governed by FLSA procedures, not the procedure prescribed for class actions. *See Calderone v. Scott*, 838 F.3d 1101, 1102 (11th Cir. 2016) ("The FLSA's § 216(b) requires plaintiffs to 'opt in' to be considered class members. In contrast, a Rule 23(b)(3) class action requires plaintiffs to 'opt out' if they do not wish to be bound by the court's judgment.") As such, Rule 23 class members must be given an opportunity to object and/or exclude themselves from the class action settlement, whereas a FLSA 216(b) collective member is only bound by the settlement if he or she knowingly opts-in to the action. *See Dozier v. DBI Servs., LLC*, 2021 WL 6061742, at *8 (M.D. Fla. Dec. 22, 2021), *report and recommendation adopted*, 2022 WL 2305814 (M.D. Fla. Jan. 19, 2022) ("Unless they return the Class Notice within the required timeframe agreeing to participate in the Settlement Agreement, an Opt-in Plaintiff will not be bound by the terms of the Settlement Agreement").

## 2.    Considerations for Approval

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Indeed, there is a "policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v.*

*Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that the Eleventh Circuit Court of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources."). When asked to review and approve the terms of settlement under the FLSA, there is a "strong presumption" in favor of approval. *Hamilton v. Frito-Lay, Inc.*, No. 605-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), *report and recommendation adopted*, No. 6:05CV-592ORL-22JGG, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). This is particularly true when, as here, the parties are represented by experienced counsel. Indeed, absent fraud and collusion, the court may not only rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel." *Diaz v. Hillsborough Cty. Hosp. Auth.*, No. 8:90-CV-120-T-25B, 2000 WL 1682918, at *4 (M.D. Fla. Aug. 7, 2000) (quoting *Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977)). The settlement in this case was finalized after the Parties engaged in discovery, protracted negotiations, mediated before an experienced, nationally recognized employment law mediator, and then continued protracted negotiations even after mediation. As the Parties explain in more detail below, this Agreement is fair and reasonable, and should be approved.

  i.   **Agreement is Fair and Reasonable**

The Court should approve the Settlement Agreement because it is fair and reasonable. The settlement was negotiated at arm's-length by experienced counsel; the amount Defendant has agreed to pay is fair and adequate; there is a significant risk of

an adverse judgment on the merits or that the collective members will recover significantly less than the monies claimed. Additionally, Defendant shared financial information that exemplified a significant risk of Defendant's inability to pay a settlement or judgment down the road should it be required to pay additional fees and costs associated with prolonged litigation.

Each Potential Collective Member will receive adequate notice sufficient for each potential opt-in to assess his or her rights, and as discussed in detail below, the amount of fees, costs and the general release payments requested are in line with sums previously awarded in similar cases. This settlement is particularly fair and reasonable because, unlike a Rule 23 *class* action settlement, only those individuals who voluntarily choose to become part of the lawsuit by returning a valid and timely Claim Form and Release, and thus to participate in the settlement, are bound by it. As the Parties explain more fully below, any Potential Collective Member who thinks the settlement is unfair is not obligated to participate in the settlement and is not bound by it.

      ii.    **The Settlement is the Product of Arm's Length Negotiations and of a Bona Fide Dispute**

A dispute is "*bona fide*" when "there are legitimate questions about the existence and extent of Defendant's FLSA liability," *Selk v. Pioneers Memoria Healthcare District,* 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016), and when its settlement "represents a fair and reasonable resolution of a … dispute rather than a 'mere waiver of statutory rights brought about by an employer's overreaching,'" *id.* at 1182 (quoting *Lynns's Food Stores,*

679 F.2d at 1354). Further, Congress recognized due to the unequal bargaining power between employers and employees, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706-07 (1945).[5] This inherent inequality, of course, is diminished when workers are represented by experienced counsel. Courts can therefore approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *Lynn's Food Stores*, 679 F.2d at 1353-54; *Selk*, 159 F.Supp.3d at 1174. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.*; *Walsh v. CorePower Yoga LLC*, No. 16-cv-05610-MEJ, 2017 WL 4390168, at *6 (N.D. Cal. Oct. 3, 2017) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)). So, "[g]enerally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation." *Ching v. Siemens Industry, Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (internal quotation omitted); *see also Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224,

---

[5] *Brooklyn Savings Bank*, 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements and explaining the low standard for judicial review when the parties are represented by counsel); *see also Evans v. Jeff D.*, 475 U.S. 717. 726-27 (1986) (in deciding whether the proposed settlement reflects a "reasonable compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

at *5 (N.D. Cal. June 22, 2017) (noting that "the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases").

As set forth above, there are numerous *bona fide* disputes in this case in the absence of settlement, including disputes on the merits, disputes as to damages (including, if any are due), including whether any liquidated damages are due, and disputes regarding the viability of conditional certification under the FLSA should the Parties continue to litigate. Further, the Parties have engaged in significant information/document exchange and counsel for both sides have sufficient information to evaluate the settlement. The settlement in this case was only reached after counsel for the Parties exchanged significant documents and information and engaged in mediation and subsequent lengthy negotiations and document exchange. It is the opinion of counsel for all Parties that the settlement is fair, adequate, and reasonable. As courts have repeatedly held, the Court should defer to the judgment of counsel unless there is evidence of collusion. *See Weldon v. Backwoods Steakhouse, Inc.*, No. 6:14-CV-79-ORL-37TBS, 2014 WL 4385593, at *3 (M.D. Fla. Sept. 4, 2014) ("Short of a trial, the Court is not in as good a position as the parties to determine the reasonableness of the settlement."). Finally, "the fact that the continued negotiations of settlement agreement terms and Notice documents were lengthy" and continued "after the initial mediation and involving additional negotiation" further demonstrates

the absence of collusion. *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1370 (N.D. Ga. 2019). There is no evidence of collusion here.

   iii. **Amount to the Class is Fair**

   After finding that there is a *bona fide* dispute between the Parties, the court presented with a proposed settlement of an FLSA claim must determine if the settlement is fair and reasonable to the workers involved. *See, e.g., Selk*, 159 F.Supp.3d at 1173. Congress has instructed that in making this determination, there is a strong presumption in favor of finding a settlement fair, especially where the settlement was, like here, negotiated as a result of an adversarial proceeding. *Nicole McGee v. Ann's Choice, Inc.*, No. 2:12-cv-02664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014).

   Under the Settlement Agreement, Defendants will pay $162,500.00 as outlined in the Agreement to resolve the claims of Plaintiffs and the Potential Collective Members. The Settlement Award for each Collective Member will constitute a formulated amount of alleged minimum wages due (i.e. the difference between the tip credit wage paid and the applicable statutory minimum wage rate, which results in $3.02 per hour worked), plus an amount to cover tips allegedly improperly retained and/or alleged liquidated damages using each Potential Collective Member's actual hours worked during the Liability Period. Specifically, the Settlement achieved will provide each Potential Collective Member **100% of their alleged unpaid minimum wages under a 3 year statutory period** using their individual records, **plus an additional amount equal to 68% of their unpaid minimum wages** to cover alleged liquidated

damages and/or alleged improperly retained tips (**excluding the $7,500.00 in general release payments**) or **100% of their alleged unpaid minimum wages under a 3 year statutory period** using their individual records, **plus an additional amount equal to 10% of their unpaid minimum wages** to cover alleged liquidated damages and/or alleged improperly retained tips (**excluding the $7,500.00 in general release payments and attorneys' fees and costs**). This is an extremely fair and reasonable outcome considering Defendant's assertion that it did not implement a mandatory tip pool that included managers, which if it prevails, would mean the collective members are owed zero dollars. Additionally, as described above in relation to this *bona fide* dispute, the Parties faced a significant risk through this litigation surrounding the facts of this case alone. The Parties contest the issues in the case and Plaintiffs' counsel assumed a very real risk because this case was accepted on a contingency fee basis with no guarantee that all the time, effort, and expense dedicated to this case would garner any recovery.

Plaintiffs have gained comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has acquired ample evidence on which to assess the proposed settlement. Based on their knowledge of the facts and the applicable law, as well as their experience in similar FLSA and state wage actions, Plaintiffs' counsel believe the settlement is fair, reasonable, and adequate. The opinion of counsel is an important factor in assessing the fairness of a settlement. *See, e.g., Leverso v. SouthTrust Bank of AL., NA.*, 18 F. 3d 1527, 1530 (11th Cir. 1994). Additionally,

the Parties have executed the Collective Action Settlement Agreement, thereby indicating their approval of the agreement. Accordingly, the proposed settlement reflects a fair and reasonable resolution of numerous bona fide disputes over liability and damages, and the Court should approve the settlement.

iv.    **Probability of Success and Lenth of Potential Litigation**

In considering settlements, courts should weigh the probability of success, the likelihood of delay in obtaining recoveries, and the risk inherent in any litigation. *See, e.g., Gevaerts v. TD Bank*, No. 1:14-CV-20744-RLR, 2015 WL 6751061, at *7 (S.D. Fla. Nov. 5, 2015). "FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Freight Sys., Inc..* 450 U.S. 728, 743 (1981). The claims here are of no difference and these factors weigh strongly in favor of approval here.

In the instant case, the primary legal issue is whether Defendant violated the FLSA tip-credit provisions, thereby resulting in unpaid minimum wages and tips. This would involve several disputes of fact (such as whether managers were included in the mandatory tip pool, and if so, how much in tips did such managers improperly retain in such tip pool, and did Defendant willfully violate the law) and then questions of law for the Court to determine (such as whether Defendant acted in good faith such that it does not owe liquidated damages). Defendant is adamant that the mandatory tip pool did not include managers. If Defendant prevails on this issue, Plaintiffs and the Potential Collective Members would receive no recovery.

In contrast, the settlement provides immediate and substantial benefits to Plaintiffs and the Potential Collective Members in an amount that provides <u>more than 100% of their unpaid minimum wages under a 3-year statutory period, even after the general release payments, and attorneys' fees and costs</u>.  The strong likelihood that any recovery would take years also weighs in favor of approval.  Indeed, public policy favors settlement, especially in complex cases such as this, where substantial resources can be conserved by avoiding time, cost, and protracted litigation.  *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("…we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation").  Plaintiffs' claims are not likely to be decided until after extensive discovery and perhaps a trial.  Even if Plaintiffs prevail, to the extent Defendant is financially viable (which is also questionable), there would likely be an appeal.  Absent settlement, Plaintiffs and the Potential Collective Members are not likely to see any recovery for years, if at all.  That fact alone weighs strongly in favor of approval.

<strong>v.    Due Process Considerations</strong>

Because there are no absent class members in a FLSA collective action, a settlement under the FLSA does not require the exacting due process considerations necessary under a class action settlement.  There is, for example, no need for an objection period or a fairness hearing; instead, approval may be sought on a single motion to enter a stipulated order.  *See Lynn's Food Stores, Inc.* at 1353.  As courts have repeatedly observed, the main reason for this is that only individuals who affirmatively

<strong>page 21 of 34</strong>

opt-in are bound by the settlement. Unlike class actions, where class members are bound unless they opt-out, potential members of a FLSA collective action can be bound by a settlement (or participate in any judgment) *only if* they opt-in. *Calderone*, 838 F.3d at 1102.

In this case, Potential Collective Members will have to submit a valid and timely Claim Form and Release in order to be bound by the settlement. Before receiving a settlement check, they will receive the Claim Form and Release along with the Notice of Settlement, that will notify them of the existence and nature of the case. *Only if* they then independently decide to opt-in by executing and returning the Claim Form and Release by the deadline will they be bound by the settlement. Any individual who chooses not to opt-in is not a part of the case, and is not bound in any way by the settlement or any release.[6] Accordingly, while Plaintiffs believe the Potential Collective Members will be very satisfied with the settlement reached, to the extent they are not, or elect to not participate in this settlement for any reason whatsoever, the Potential Collective Member will not be prejudiced or forced to participate. That significant difference between a class action settlement and an FLSA settlement weighs in favor of approval, since the individual class members will have the opportunity to make an informed decision about whether to join the settlement and will not be bound by it

---

[6] The release is limited to unpaid wages under the FLSA and state wage and hour laws only during the Liability Period. This is a narrow release in exchange for the settlement here. Only the Named Plaintiffs will be releasing any and all claims in exchange for an additional payment.

unless they affirmatively choose to do so by submitting a valid and timely Claim Form and Release.

### G.    ATTORNEYS' FEES, COSTS AND GENERAL RELEASE PAYMENT

Plaintiffs request that the Court award attorneys' fees and litigation costs (including the costs of administration), and a general release payment to each of the three named Plaintiffs. Defendant joins Plaintiffs' request to approve the general release payments and the anticipated costs of administration, and do not oppose Plaintiffs' counsel's request for fees and additional litigation costs.

### 1.    Attorneys' Fees and Costs, Including Costs of Settlement Administration

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained. *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989); *see also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1195 (6th Cir. 1974). The Supreme Court and the Eleventh Circuit have noted that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from

the fund as whole." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (citing *Boeing*, 444 U.S. 472).

"In the Eleventh Circuit, class counsel is awarded a percentage of the fund generated through a class action settlement." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011). In *Camden,* the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden,* 946 F.2d at 774. In FLSA collective actions, "[a]lthough the Court must consider the reasonableness of any award of attorneys' fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face." *Vogenberger v. ATC Fitness Cape Coral, LLC,* 2015 WL 1883537, at *5 (M.D. Fla. Apr. 24, 2015). If the parties submit a proposed FLSA settlement that (1) constitutes a compromise; (2) makes full disclosure of the terms of the settlement, including the factors and reasons justifying the compromise; and (3) represents that the plaintiff's attorneys' fee was agreed to separately and without regard to the amount paid to plaintiffs, then unless the settlement does not appear reasonable on its face, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel. *Bonetti v. Embarq Management Company,* 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009); *In re Progressive Ins. Corp. Underwriting & Rating Practices Litig.*, No. 1:03-cv-01519-MP-AK, 2008 WL 11348505, at

page 24 of 34

*2 (N.D. Fla. Oct. 1, 2008) ("A fee agreement between parties in the settlement of a class action is encouraged where, like here, the parties negotiated attorneys' fees separately from the underlying settlement and only after the terms of the settlement were reached.").

Even if, unlike here, the parties did not negotiate the attorneys' fees separately and without regard to the amount paid to Plaintiffs, an award of attorneys' fees representing less than one-third of the Common Fund is reasonable. *See, e.g.*, *Freeman v. Training wheel Corp., LLC*, Case No. 2:19-cv-52-FtM-NPM, 2020 WL 7401488, at *3 (M.D. Fla. June 26, 2020) (approving settlement agreement in an FLSA collective action and finding an attorneys' fees award constituting 30% of a common fund reasonable where "the attorneys' fees were not agreed upon separately and without regard to the amount paid to [p]laintiffs"); *Mosley*, 2021 WL 293243 at *4 (approving attorneys' fees representing approximately one-third of the gross settlement amount); *Freeman*, 2020 WL 7401488, at *3 (M.D. Fla. June 26, 2020) (approving settlement award of attorneys' fees in FLSA collective action representing 30% of a common und). The Court need not conduct an in-depth analysis of the attorneys' fees award where, as here, "the total fee award sought is not patently unreasonable and the Defendant does not contest the reasonableness of the award." *Freeman*, 2020 WL 7401488, at *3.

"The lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362. Rather, the lodestar "creates an incentive to keep litigation going in order to maximize the number

of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.,* 962 F. Supp. 1254, 1256 (C.D. Cal. 1997).[7] Precisely for this reason, in *Camden,* the Eleventh Circuit criticized lodestar and the inefficiencies that it creates. 946 F.2d at 773–75. In so doing, the court "mandate[d] the *exclusive* use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice." *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) (emphasis added); *see also* Alba Conte, *Attorney Fee Awards* § 2.7, at 91 fn. 41 ("The Eleventh ... Circuit[ ] repudiated the use of the lodestar method in common-fund cases"). Under *Camden,* courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all. *See, e.g.,*

---

[7] Additionally, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam,* 176 F. Supp. 2d at 1335 (quoting *Behrens,* 118 F.R.D. at 548); *see also In re Continental Ill. Sec. Litig.,* 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler,* 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta,* 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified,* 803 F.2d 1135 (11th Cir.). As Judge King from the Southern District of Florida has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer.... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens,* 118 F.R.D. at 548.

*David,* 2010 WL 1628362.[8]  "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded.... In this context, monetary results achieved predominate over all other criteria." *Camden,* 946 F.2d at 774 (citations and alterations omitted).

Here, Defendant agrees to pay Plaintiffs' attorneys' fees, costs and expenses (including administration costs) totaling $52,500.00. The attorneys' fees were negotiated separate and apart from the amounts to be paid to Plaintiffs and the Potential Collective Members. Plaintiffs' Counsel currently has $1,647.08 in costs and anticipates incurring additional costs estimated at $500.00 to administer the Notice and mailing of checks (exclusive of fees related to same), meaning the "net" attorneys' fees are approximately $50,350.00,[9] which equals roughly 30% of the maximum settlement amount after costs.

Numerous recent decisions in similar wage and hour class/collective actions within this Circuit have awarded attorneys' fees up to and even above 40% of the total recovery. *See, e.g., Dozier,* 2021 WL 6061742, at *7 (approving 33% in FLSA collective

---

[8] *See also Stahl v. MasTec, Inc.,* 2008 WL 2267469 (M.D. Fla. 2008); *Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.,* 2002 WL 34343944 (S.D. Fla. 2002); *Fabricant v. Sears Roebuck & Co.,* 2002 WL 34477904 (S.D. Fla. 2002).

[9] It should be noted that Plaintiffs' counsel has already incurred substantial fees associated with discovery, mediation, reviewing voluminous records, calculating and recalculating damages on multiple occasions based on newly produced data, numerous settlement discussions, preparation of class and collective motions, as well as documents associated with settlement and the notice process. Plaintiffs' counsel will also incur additional fees associated with the administration of settlement to include discussions with Potential Collective Members who will reach out with questions regarding the settlement.

action settlement); *Mansfield v. Castaways Backwater Café, Inc.*, No. 07-cv-401, 2008 WL 3889598, at \*2 (M.D. Fla. Aug. 18, 2008) (approving 40% attorneys' fee award as reasonable in FLSA collective action); *Mesa v. AG-Mart Produce, Inc.*, 2010 WL 4909591 (M.D. Fla. Nov. 19, 2010) (approving fee of $350,000 out of $750,000 minimum settlement, or 46.6%); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at \*4 (S.D. Fla. 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at \*1 (M.D. Fla. May 13, 2015) ("An attorney's fee… which is one-third of the settlement fund… is fair and reasonable in light of… fee awards in comparable cases.); *Freeman v. Trainingwheel Corp., LLC*, 2020 WL 7401488 (M.D. Fla. June 26, 2020) (Approving common fund in collective action with fees of 1/3 plus out-of-pocket costs); *Signorelli v. Utiliquest LLC*, 5:08-cv-38-OC-10GRJ, Docket Entry 46 (July 25, 2008) (Hodges, J.) (awarding 30% for attorneys' fees out of $10,000,000 common fund); *Kreher v. City of Atlanta, Georgia*, 2008 WL 113999561 (N.D. Ga. Sept. 30, 2008) (Approving common fund in collective action that provided $2,410,000 in fees from a $7,500,000 common fund, or 32.13%); *Vogenberger v. ATC Fitness Cape Coral, LLC*, 2015 WL 1883537, at\*3 (M.D. Fla. April 24, 2015) (fee award of 33% of the FLSA common fund); *Reyes v. AT & T Mobility Servs., Ltd. Liab. Co.*, 2013 WL 12219252, at \*3 (S.D. Fla. June 21, 2013) ("Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit.); *Graves v. Estes Heating & Air Conditioning, Inc.*, Case No. 3:14-cv-0084-TCB, Dkt. 47 (N.D. Ga. 2015) (awarding fee of 33.33% of the common fund in FLSA case); *Morefield v.*

*NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. 2012) (same); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla. 2011) (same); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00-cv-00435-RH-WCS, Dkts. 14-15 (N.D. Fla. 2000) (same).[10] As such, this Court should approve the attorneys' fees requested here, which Defendant has agreed to pay and does not oppose here.

Plaintiffs' counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement under *See* 29 U.S.C. §216(b); *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988). Plaintiff's counsel seeks reimbursement of the following litigation expenses, which were reasonable and necessary for prosecuting this case.

| Cost | Amount |
|------|--------|
| Court Fees | $ 402.00 |
| Service | $ 229.80 |

---

[10] *See also Control Equip. Co.*, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017); *Heffernan Bryant v. United Furniture Indus., Inc.*, 2017 WL 639320, at *5 (N.D. Miss. Feb. 16, 2017)); *Wolfe v. Anchor Drilling Fluids USA Inc.*, 2015 WL 12778393, at *3 (S.D. Tex. Dec. 7, 2015) (approving a 40% contingency fee as reasonable); *Quintanilla v. A & R Demolition Inc.*, 2008 WL 9410399, at *10 (S.D. Tex. May 7, 2008) *In re Corel Corp., Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 497 (E.D. Pa. 2003); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011) ("In common fund cases, fee awards generally range anywhere from nineteen percent to forty-five percent of the settlement fund."); *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 1029 (S.D. Ohio 2001) ("the range of reasonableness ... has been designated as between twenty to fifty percent of the common fund"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (noting that a district court had determined that the fee awards have ranged from nineteen percent to forty-five percent of the settlement fund); *Mclain et. al. v. First Acceptance Corp.*, No. 3- 17-cv-00408 [D.E. 57] (M.D. Tenn. 2018) (Crenshaw J./Holmes M.J.) (Order approving attorneys' fees and costs approximating 66% of the total settlement amount); *Wilson et. al. v. MMR Senior Alliance Corp et. al.*, No. 3:17-cv-1412 [D.E. 56] (M.D. Tenn. 2018) (Crenshaw J./Holmes M.J.) (Order approving attorneys' fees and costs approximating 50% of the total settlement amount).

| Cost | Amount |
|------|--------|
| Mediation | $ 1,000.00 |
| Postage (including future anticipated) | $ 515.28 |
| **TOTAL** | **$ 2,147.08** |

Here, this Court should approve the litigation costs and anticipated settlement administration costs requested. Defendant joins Plaintiff in the request for approval of the settlement administration costs, which are reasonable and necessary to carry out the notice procedures described in the Agreement. Defendant also does not oppose Plaintiffs' request for reimbursement of litigation costs and expenses, which were reasonably and necessarily incurred in this matter and which are included in the $52,500.00 negotiated amount.

## 2.    General Release Payments

Defendant also agrees to make a general release payment in the amount of Two Thousand Five Dollars ($2,500.00) to each Named Plaintiff (Thornton, Dhanarajan and Bennett), in addition to their individual settlement share.  This payment is compensation for the execution of a general release of any and all claims and was negotiated separately from the amounts paid related to the collective action claims. General releases that are supported by independent consideration are routinely approved in FLSA settlements. *See, e.g., Hatfield v. Panama City Beach Senior Servs. Found., Inc.,* No. 5:18-CV-239-MJF, 2019 WL 13163266, at *2 (N.D. Fla. July 22, 2019) (approving general release supported by an additional $500.00 as consideration for executing same); *Pharr v. Highway Specialties, Inc.,* No. 3:18CV2107-MCR-EMT, 2019 WL

13162853, at *2 (N.D. Fla. May 13, 2019) (approving general release that was negotiated separately from the resolution of Plaintiff's claims and which was supported by separate consideration); *Goodson v. OS Rest. Services, LLC*, 5:17-cv 10-Oc-RBD-PRL, 2018 WL 1701985, at *1 (M.D. Fla. Mar. 21, 2018) (Additional consideration for pervasive release did not undermine fairness of FLSA settlement), *report and recommendation adopted*, 2018 WL 1695406 (M.D. Fla. Apr. 6, 2018) (Dalton, J.); *Reed v. City of Apopka*, Case No: 6:17-cv-1163-Orl-40-DCI, 2017 WL 11025813, at *2 (M.D. Fla. Dec. 19, 2017) (Additional consideration for a general release did not affect the fairness of the compromised FLSA settlements)(Irick, J), *report and recommendation adopted*, 2017 WL 11025765 (M.D. Fla. Dec. 22, 2017)(Byron, J.); *O'Neill v. Speedster Services, LLC*, 6:18-cv-120- ORL 37GJK, 2018 WL 4956775, at *4 (M.D. Fla. Sept. 11, 2018) (Separate consideration for a general release allowed for approval of agreement)(Kelly, J.), *report and recommendation adopted*, 2018 WL 4953239 (M.D. Fla. Oct. 12, 2018)(Dalton, J.); *Martinez v. Ambi Paving, LLC*, 6:18-cv-737- Orl-37GJK, 2018 WL 5003754, at *3 (M.D. Fla. Oct. 11, 2018)(additional consideration for the release of retaliation claims not pleaded was sufficient)(Kelly. J.), *report and recommendation adopted*, 2018 WL 4963697 (M.D. Fla. Oct. 15, 2018)(Dalton, J.); *Singh v. Petersen Dean Roofing & Solar Sys., Inc.*, 6:17-cv-1110-Orl-41DCI, 2018 WL 3235572, at *1 (M.D. Fla. June 6, 2018) ($300.00 in exchange for a general release was sufficient)(Irick, J.), *report and recommendation adopted as modified*, 2018 WL 3219410 (M.D. Fla. July 2, 2018)(Mendoza, J.)

  Here, the Parties respectfully request this Court approve the requested general

release payments described above.

### H.    NOTICE TO THE PROPOSED COLLECTIVE

As part of the Settlement Agreement, the Parties consent to notice of this case and the Settlement to be issued to the following collective, pursuant to the FLSA, 29 U.S.C. 216(b):

> All current and former servers and bartenders who were paid a tip-credit wage and who contributed to a mandatory tip pool at Defendant's restaurant during one or more workweeks during the period of November 1, 2019 to November 1, 2022.

The proposed Notice (Ex. A to the Parties' Settlement Agreement) and Claim Form and Release (Ex. B to the Parties' Settlement Agreement), provides information in clear and concise terms on the lawsuit itself, the Settlement collective, the terms and conditions of the Settlement, the relief the Settlement will provide collective members that opt-in, and the procedure for opting-in to the Settlement by submitting a valid and timely Claim Form and Release.

### I.    CONCLUSION

For these reasons, the Court should approve the Settlement reached.

**WHEREFORE**, Plaintiffs and Defendant respectfully move for entry of an Order, in the form attached hereto as **Exhibit 6**, ordering the following:

(1) That this action is certified as a collective action under the Fair Labor Standards Act for settlement purposes;

(2) That Kimberly De Arcangelis, Esquire and Jolie Pavlos, Esquire of Morgan

& Morgan, P.A. act as Class Counsel to administer the notice to the Potential Collective Members;

(3) That the Parties perform the Notice process and all other duties described in the Collective Action Settlement Agreement executed between the Parties;

(4) That this Court retains jurisdiction to enforce the terms of the Collective Action Settlement Agreement, through the conclusion of the Notice process;

(5) That after the Notice process is complete, Plaintiffs' Counsel shall file with the Court all executed Claim Form and Release documents executed by the Opt-in Collective Members and the Parties' Joint Notice of Completion of Settlement/Notice Procedures and Stipulation of Dismissal of the Lawsuit with Prejudice seeking entry of a Final Dismissal Order dismissing the Action on the merits with prejudice with respect to all Opt-in Collective Members during the Liability Period;

(6) Any other relief that this Court deems just and appropriate.

## LOCAL RULE 7.1(F) CERTIFICATION

The Parties hereby certify that the foregoing Joint Motion for Approval of Settlement Agreement and for Certification of FLSA Collective Action for Settlement Purposes Only, contains 8,688 words exclusive of case style, signature block and any certificate of service.

Respectfully submitted this 15th day of April 2024.

/s/ Kimberly De Arcangelis
Kimberly De Arcangelis, Esq.
Bar No.: 0025871
Jolie N. Pavlos, Esq.
Bar No.: 0125571
**MORGAN & MORGAN, P.A.**
20 North Orange Avenue, 16th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 245-3383
E-mail: kimd@fortheopeople.com
　　　　jpavlos@forthepeople.com

*Attorneys for Plaintiffs*

/s/ Elmer C. Ignacio
Elmer C. Ignacio, Esq.
Florida Bar No. 537683
**RAYBOUN WINEGARDNER, PLLC**
1410 Piedmont Drive E, Suite 2
Tallahassee, Florida 32308
Telephone: (850) 907-3313
E-mail: elmer@flalawfirm.com
*Attorneys for Defendant*