## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JARED THORNTON, et al.,**

      **Plaintiffs,**

**v.**                                                                  **Case No. 4:22-cv-429-AW-MAF**

**DAO RESTAURANT, LLC,**

      **Defendant.**

_____/

## ORDER DENYING MOTION TO APPROVE SETTLEMENT AND TO CERTIFY COLLECTIVE ACTION FOR SETTLEMENT PURPOSES

The three Plaintiffs and the Defendant jointly moved for an order certifying—for settlement purposes only—the case as an FLSA collective action and approving their collective-action settlement. *See* ECF No. 44; ECF No. 44-1; 29 U.S.C. § 216(b).

FLSA settlements generally require court approval, and courts must scrutinize them for fairness. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Courts have wide discretion in determining whether to approve a settlement. *Faught v. Am. Home Shield Corp*., 668 F.3d 1233, 1240 (11th Cir. 2011); *Rodrigues v. CNP of Sanctuary, LLC*, 523 F. App'x 628, 629 (11th Cir. 2013) (citing *Faught* in FLSA case). Courts also have wide discretion in determining whether to create an opt-in class under § 216(b). *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). Having carefully considered the matter, I conclude the

motion must be denied. The parties have not shown that the settlement is fair or reasonable, and they have not shown that there should be a collective action.

Under the parties' proposed resolution, the court would certify a collective action, the potential opt-in plaintiffs would receive notice and an opportunity to participate in the settlement, Defendant would pay each Plaintiff and each opt-in $3.02 per hour worked and some additional amount for liquidated damages and improperly retained tips, each named Plaintiff would receive an additional $2,500 for release of other, unspecified claims, and Plaintiff's counsel would receive $52,500, or roughly 30% of the total maximum amount Defendant *might* have to pay. *See* ECF No. 44-1. There are several problems with this proposal.

First, there is no obvious benefit to the collective action. The parties seek conditional certification *solely* for purposes of the settlement; they do not agree that a collective action is appropriate generally. ECF No. 44 at 5; *see also id.* at 4 ("Defendant maintains that it has a number of meritorious defenses to the claims asserted in this action, including . . . defenses to conditional certification, as well as arguments for future decertification."). If the current parties wish to settle, they may do so. But it is unclear why these three Plaintiffs would condition their settlement on expansion of the lawsuit. It would not benefit Plaintiffs; they would receive the same amount under the proposed settlement whether one or one hundred others opted in. It would not benefit Plaintiffs' counsel; they would receive the same

$52,500 either way. (Although a large opt-in pool might affect the reasonableness of their fee demand. More on that below.) And as the parties note in their motion, any potential claimant not wanting to join could simply file his own lawsuit. Not noted in their motion is the fact that any potential claimant wishing to settle his own claim could likewise do so without a conditional certification. The benefit of a collective action—resolving disputed factual and legal issues at once—is not served by the parties' proposed agreement. It is unclear what benefit is served.

Second, if there were a collective action, there is no basis to require potential opt-ins to use (and pay for) Plaintiffs' counsel. The motion contemplates that all opt-ins would be represented by the same counsel. *See* ECF No. 44-1 at 13 (explaining in the proposed notice to potential opt-ins that "[t]he attorneys for the Plaintiffs and the Potential Collective Members in the Lawsuit" are Plaintiffs' counsel). If others are permitted to opt in, though, they can choose their own counsel. They can also choose to proceed pro se. *See Hubbard v. Jerry's Seamless Guttering, Inc.*, 2020 WL 6038110, at *3 (S.D. Fla. Oct. 6, 2020) (rejecting notice language suggesting "that potential plaintiffs may only retain their own counsel if they do not join [the named plaintiff's] action"); *see also id*. at *3 n.3 (collecting cases); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 2008 WL 5263750, at *5 (E.D. Wisc. Dec. 18, 2008)

("I see no reason why such a provision designating counsel should be included in a notice under § 216(b) in the first place . . . .").[1]

Third, the agreement calls for additional compensation ($2,500 for each of the three Plaintiffs) for their executing general releases. ECF No. 44-1 at 23. But there is no indication that the three Plaintiffs have any other viable claims. This makes the additional payments seem like incentive payments. *Cf. Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020) (noting in class-action context that incentive awards—those "that compensate[] a class representative for his time and rewards him for bringing a lawsuit" are improper). The parties ask the court to find the overall settlement—including with potential opt-ins—is fair and reasonable. But they do not explain how it would be fair to the potential opt-ins for them to not share in those additional payments. After all, every dollar paid to the Plaintiffs is a dollar unavailable to the potential opt-ins.[2]

---

[1] Neither Plaintiffs nor their attorneys speak for the potential opt-ins. *See Cameron-Grant v. Maxim Healthcare Services, Inc*., 347 F.3d 1240, 1249 (11th Cir. 2003) ("Even if the § 216(b) plaintiff can demonstrate that there are other plaintiffs 'similarly situated' to him, he has no right to represent them. Under § 216(b), the action does not become a 'collective' action unless other plaintiffs affirmatively opt into the class by giving written and filed consent.") (citation omitted). Although much of the motion and agreement reads as though Plaintiffs' counsel represents all future opt-ins, they do not.

[2] The parties chose to condition these "general release" payments on the remainder of the settlement. If the Plaintiffs have bona fide non-FLSA claims that the parties wish to resolve for $2,500, the parties could of course settle those claims

Fourth, the parties have not shown that the attorney's fees sought are reasonable. The Plaintiffs stand to receive some $20,000 under the agreement. Their attorneys stand to receive north of $50,000. There need not always be proportionality, and indeed, there often will not be if little is at stake. A plaintiff recovering only $500, for example, may have fees in the thousands. But here, there is no indication that $52,500 is reasonable.

Counsel disclaims any notion that the request is based on a lodestar (a reasonable number of hours multiplied by a reasonable hourly rate). ECF No. 44 at 24-25. Instead, counsel bases the request on a percentage of the "common fund" they hope to generate. But the agreement does not produce a "common fund." "A common-fund case is when a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Drazen v. Pinto*, 101 F.4th 1223, 1265 (11th Cir. 2024) (cleaned up) (quoting *In re Home Depot Inc.*, 931 F.3d 1065, 1079 (11th Cir. 2019)). "On the other hand, a 'claims-made' settlement is a settlement that does not have a fixed settlement fund, but rather provides that the defendant will pay claims of class members who file them, usually up to some fixed ceiling." *Id.* (cleaned up) (quoting 4 William B. Rubenstein, Newberg & Rubenstein on Class Actions § 13:7 (6th ed.

---

outside of this FLSA case. Their decision to do otherwise suggests these are, in fact, incentive payments.

Nov. 2023 update)). This agreement is a claims-made settlement. It explicitly says so. ECF No. 44-1 at 5 ("This is a claims-made settlement . . . ."). The Defendant would pay claims up to $162,500 but would retain all unclaimed funds. *Id.* at 2, 5.

Arrangements like this "tend to promise far more than they deliver," with Defendants often paying "only a small percentage of the potential total recovery." *Drazen*, 101 F.4th at 1266 (quoting Newberg § 13:7).

> This troubles courts, even more so if the settlement also includes a "clear sailing" agreement whereby the defendant agrees not to contest class counsel's fee request up to a certain level. The combination makes it appear as if class counsel agreed to a low defendant liability in exchange for an easy fee.

*Id.* (quoting Newberg § 13:7). Here, the agreement provides that Defendant will not contest counsel's requested fee of $52,500—no matter how few people recover. ECF No. 44-1 at 4-5. The parties have not shown this is reasonable.[3]

Finally, the parties provide insufficient information about the number of potential opt-ins or how the "amount to cover tips allegedly improperly retained" was determined. ECF No. 44 at 6. Without additional information, the court cannot properly scrutinize the settlement for fairness.

---

[3] Again, funds provided to counsel are funds unavailable for Plaintiffs. "To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee." *Silva v. Miller*, 307 F. App'x 349, 352 (11th Cir. 2009).

For all of these reasons, and in an exercise of discretion, the court DENIES the motion (ECF No. 44).

Within 14 days the parties must confer and file a proposed new litigation schedule.

SO ORDERED on June 28, 2024.

s/ *Allen Winsor*
United States District Judge